UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

Jaylynn Grace REEVES, and
Bryan Douglas REEVES                                              PLAINTIFFS

v.                                              CIVIL ACTION NO. 3:18-CV-10-CRS

BROOKSIDE APARTMENT
PROPERTIES, LLC                                                     DEFENDANT

**MEMORANDUM OPINION**

I.   Introduction

    This case is before the Court on two interrelated motions: Defendant Brookside Apartment Properties, LLC's motion for judgment on the pleadings (DN 7) and Plaintiffs Jaylynn and Bryan Reeves motion to dismiss Brookside's counterclaims (DN 12). Both motions are ripe. Finding that one of Brookside's claims is moot and that it is entitled to judgment on the pleadings for the rest of its claims, the Court will grant that motion in part and deny that motion in part. Further finding that Brookside has stated a claim on which relief can be granted as to its remaining claims, the Court will deny the Reeveses' motion to dismiss. However, considering that only the property damage claim remains, the Court will dismiss that claim *sua sponte* and decline to exercise supplemental jurisdiction.

II.  Legal Standard

    "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). In undertaking these inquiries, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they

1

are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

To the extent a Rule 12(c) motion challenges a party's pleading, the inquiry is equivalent to that used under Rule 12(b)(6). *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). Therefore, to survive a Rule 12(c) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dept. of Child Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In undertaking this inquiry, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett*, 561 F.3d at 488. "The defendant has the burden of showing that the plaintiff has failed to state a claim for relief[.]" *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

To the extent a Rule 12(c) motion argues that entry of judgment is proper in favor of a party, the inquiry is equivalent to that used for summary judgment under Rule 56. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (citation omitted). Judgment is proper in such a scenario when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties [is insufficient]; the requirement is that there

be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* In undertaking this analysis, the Court must view the evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The party moving for judgment on the pleadings bears the burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). They can meet this burden by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute." FED. R. CIV. P. 56(c)(1). This burden can also be met by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**III.     Factual and Procedural Background[1]**

Jaylynn and Bryan Reeves began renting an apartment at the Oaks St. Andrews in Louisville, Kentucky in November 2014. DN 5 at 6. The Oaks is owned and operated by Brookside Apartment Properties, LLC, a commercial real estate firm located in Nashville, Tennessee. *Id.* The Reeveses' lease was a year-to-year lease with the most recent iteration signed on October 21, 2016. *Id.* While living at the apartment, the Reeveses engaged in aggressive and obscene behavior targeted at Brookside staff and other tenants. *Id.* On some occasions, they used racial slurs on the Oaks at St. Andrews' public Facebook page. *Id.* Then, in August 2017, Brookside's regional manager witnessed the Reeveses engaging in aggressive and

---

[1] The Reeveses failed to specifically deny many of the factual allegations contained in Brookside's counterclaim. *See* DN 5 at 5–9 (Brookside's counterclaim); DN 6 at 1–2 (Reeveses' answer). Further, their answer did not contain a general denial as permitted by Rule 8(b)(3). As a result, many facts in this case are deemed admitted. FED. R. CIV. P. 8(b)(6). Unless otherwise noted, the facts recited are admitted or uncontested.

3

confrontational behavior toward Brookside's office staff. *Id.* As a result, she instructed staff to execute a non-renewal of Plaintiffs' Lease. *Id.* A letter to that effect was issued to the Reeveses on October 11, 2017. *Id* at 7. The lease provides that tenants whose yearly leases are not renewed convert to a month-to-month tenancy under the same terms and conditions of the yearly lease. *Id.* In such a scenario, the lease imposes an automatic, additional fee of $100 per month. *Id.*

Once the Reeveses' lease converted to a month-to-month tenancy, they refused to pay the additional $100 fee. *Id.* Brookside then began charging the Reeveses late fees. DN 5 at 7. The Reeveses claim that these amounts were not lawfully due because the additional amount was charged in retaliation for filing a claim of discrimination with the Louisville Metro Human Rights Commission (LMHRC) and reporting housing code violations to the Louisville Metro Government. DN 6 at 1. A housing inspector investigated the alleged housing code violations and uncovered four violations. DN 1-1 at 4, 11. While the LMHRC investigation was pending, the Reeveses filed a complaint in the Jefferson County Circuit Court, alleging Brookside failed to accommodate Jaylynn's disability and retaliated against them by raising their rent and failing to renew their lease. DN 1-1. Specifically, the Reeveses alleged that they requested to park Bryan's work truck at the complex so that Jaylynn would not have to wake up and take him to his truck, disrupting her medication schedule. DN 1-1 at 4.

In January 2018, the Reeveses offered partial payment for their rent obligations, which Brookside declined to accept before providing notice that the Reeveses had defaulted on their lease. DN 5 at 7. Around the same time, the case filed in Jefferson County Circuit Court was removed to this Court. DN 1-1. Once here, Brookside filed an answer including a counterclaim. DN 5. Brookside brought four claims for eviction, unpaid rent, interference with peaceful

enjoyment, and property damage. *Id*. at 8–9. The Reeveses filed an answer admitting several facts. DN 6. *See also* n.1, *supra*.

While this action was pending, Brookside initiated forcible detainer proceedings in the Jefferson County District Court. On March 28, 2018, the parties reached an agreement which required the Reeveses to vacate within 20 days, required Brookside to provide a neutral recommendation on inquiry, and required Brookside to "pursue damages, including rent owed and late fees, in a separate action." DN 12 at 5. The Reeveses then moved to dismiss Brookside's counterclaim in this action. DN 12 at 1.

**IV.    Discussion**

As an initial matter, the Court must address whether it retains jurisdiction, as the Reeveses have attempted to "withdraw" their discrimination claims and deprive the Court of jurisdiction. Finding that jurisdiction remains, the Court then turns to address the Reeveses' claims based on failure-to-accommodate, retaliation, and punitive damages. Ultimately, the Court concludes that Brookside's motion for judgment on the pleadings should be granted as to those claims. Finally, the Court considers Brookside's claims for eviction, unpaid rent, interference with peaceful enjoyment, and property damage. Finding that Brookside is entitled to judgment on the unpaid rent and peaceful interference claims, the Court will grant Brookside's motion for judgment on the pleadings and deny the Reeveses' motion to dismiss on those claims. As to the eviction claim, the Court finds it has become moot in light of the Jefferson County District Court's forcible detainer order. As a result, the Court will deny Brookside's motion for judgment on the pleadings to that extent. Finally, the Court concludes that the property damage claim states a plausible claim on which relief may be granted and therefore denies the Reeveses' motion to dismiss on that claim. However, the Court concludes that it would be in the best

interest of judicial economy for it to dismiss the property damage claim and decline to exercise supplemental jurisdiction.

### A. Jurisdiction

In their response to Brookside's motion for judgment on the pleadings, the Reeveses purport to "withdraw any an [sic] all claims associated with the claimed discrimination based upon the disability of Plaintiffs." DN 8 at 1.[2] As a result, they reason, "this Court lacks subject matter jurisdiction because, the minimal amount in controversy for jurisdiction by diversity is not met herein." *Id*. at 1–2.

As an initial matter, such a "withdrawal" is not operative to dismiss a case. For the Plaintiffs to voluntarily dismiss their case after an opposing party has filed an answer or motion for summary judgment, they must obtain a stipulation of dismissal signed by all parties who have appeared. FED. R. CIV. P. 41(a)(1)(A)(ii). That was not obtained in this case. Further, even if the withdrawal were operative, the amount in controversy is determined at the time of removal. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004). Subsequent developments do not automatically deprive the Court of jurisdiction, even over claims brought within the Court's supplemental jurisdiction. Supplemental jurisdiction is discretionary, though courts should balance the interests when deciding whether to retain a claim based on supplemental jurisdiction. *Id.* at 211. *See also* 28 U.S.C. § 1367(a). On balance, the Reeveses' attempted withdrawal is nothing short of an attempt to manipulate this Court's jurisdiction and avoid their obligations, which the Court will not abide.

---

[2] They also argue that this Court lacks jurisdiction because the Jefferson County District Court has exclusive jurisdiction over the eviction claim and that the Jefferson County District Court ruling would moot the entire case. That ruling has come and gone. While it does moot the eviction claim, the remaining claims are left intact and explicitly contemplated by the agreed order.

B.  **The Reeveses Claims**

The Reeveses bring a failure-to-accommodate claim with a related punitive damages claim and two retaliation claims.

i.  **Failure-to-Accommodate Claim**

The Reeveses argue that Brookside failed to accommodate their request that Bryan be permitted to park his work truck on the property. DN 1-1 at 4. They requested such an accommodation "because Jaylynn, who is a disabled individual, needed to take her medication and that when she did so, she would not be able to awaken and drive her husband to his truck." *Id.* Since the claim is based entirely on Jaylynn's disability, the Court restricts its view of the claim to her disability and does not consider any purported disability of her husband, Bryan.

The Kentucky Civil Rights Act prohibits discrimination based on "race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker." KY REV. STAT. § 344.040(1)(a). In the context of housing, the statute makes it an unlawful housing practice for someone dealing in real estate "to refuse to sell, exchange, rent, or lease, or otherwise deny to or withhold, real property from any person because of race, color, religion, sex, familial status, disability, or national origin." KY REV. STAT. § 344.360(1). For alleged violations, there are two routes for bringing a claim: by filing an original action in circuit court, KY REV. STAT. § 344.450, or by filing a complaint with a statutorily created human rights commission—either the Kentucky Human Rights Commission, KY REV. STAT. § 344.180, or a local human rights commission, KY REV. STAT. § 344.310.

Kentucky courts have traditionally treated orders of dismissal based on lack of probable cause from the Kentucky Human Rights Commission or county human rights commissions as

7

final orders with preclusive effect under the statute. *Vaezkoroni v. Domino's Pizza, Inc.*, 914 S.W.2d 341, 341–42 (Ky. 1995). However, in 1996, the General Assembly amended the portion of the Kentucky Civil Rights Act dealing with subsequent proceedings. *See* KY. REV. STAT. § 344.270. For some time, it was unclear whether the new language conflicted with *Vaezkoroni*. *See Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 545–46 (6th Cir. 2012) (noting lack of guidance from the Supreme Court of Kentucky on amended statute, but that "post–1996 decisions of the Kentucky intermediate appellate courts have consistently applied the rule that a final order from a human rights commission bars subsequent judicial proceedings based on the same grievance."). Some clarity came in 2016 when the Supreme Court of Kentucky held that, with the new language, "there is nothing remaining in the statute to bar claims filed in circuit court, despite final and appealable orders dismissing the exact same claim filed in the administrative agency." *Owen v. Univ. of Ky.*, 486 S.W.3d 266, 272 (Ky. 2016) (overruling *Vaezkoroni*). Therefore, statutory preclusion does not prevent the Reeveses from proceeding in this case.

However, the Supreme Court of Kentucky was careful to note in *Owen* that its holding was premised on the statute alone and did not decide "whether common law doctrines, such as issue preclusion or claim preclusion, apply to bar trial court consideration de novo of a final administrative ruling." *Id*. at 273, n.31. Cases post-*Owen* have consistently continued to apply claim preclusion to administrative proceedings which are judicial in nature. *See e.g. Ky. State Police v. Scott*, 529 S.W.3d 711, 717 (Ky. 2017) (recognizing preclusive effect of Kentucky State Police Personnel Board order dismissing internal grievance); *Ky. Ret. Sys. v. Wimberly*, 495 S.W.3d 141, 146–47 (Ky. 2016) (noting the availability of claim preclusion in administrative disability benefits scheme); *Kindle v. Emington*, No. 2015-CA-1158-MR, 2017 WL 544639, at *

1 (Ky. Ct. App. Feb. 10, 2017) (recognizing claim preclusion based on Civil Service Commission's ruling and factual findings). Therefore, the Court will consider the common law doctrine of claim preclusion.

Claim preclusion, "is basic to our legal system and stands for the principle that once rights of the parties have been finally determined, litigation should end." *Miller v. Admin. Office of Courts*, 381 S.W.3d 867, 871 (Ky. 2011) (quoting *Slone v. R & S Mining, Inc.*, 74 S.W.3d 259, 261 (Ky. 2002)). The doctrine "prevents the relitigation of the same issues in a subsequent appeal and includes every matter belonging to the subject of the litigation which could have been, as well as those which were, introduced in support of the contention of the parties on the first appeal." *Id.* at 872 (quoting *Huntzinger v. McCrae*, 818 S.W.2d 613, 615 (Ky. Ct. App. 1990)). "Three elements must be met for the rule to apply: (1) there must be an identity of parties between the two actions; (2) there must be an identity of the two causes of action; and (3) the prior action must have been decided on the merits." *Id.* (citing *Harold v. Irvine*, 283 S.W.3d 246, 250 (Ky. Ct. App. 2009)).

In her housing discrimination complaint with the LMHRC, Jaylynn Reeves alleged that Brookside discriminated against her on the basis of disability because it would not allow "her husband to park his truck on the premises so she can maintain the proper medication schedule." DN 7-1 at 3. The Commission adopted an order dismissing the case "with a finding of no reasonable cause to substantiate the Complainant's allegations of discrimination." DN 7-2 at 2. In their complaint here, the Reeveses argue that Brookside failed to accommodate their request that Bryan be permitted to park his work truck on the property. DN 1-1 at 4. They requested such an accommodation "because Jaylynn, who is a disabled individual, needed to take her

medication and that when she did so, she would not be able to awaken and driver her husband to his truck." *Id.*

Jaylynn Reeves and Brookside were parties in the LMHRC proceeding and are parties in the present litigation. Further, the two causes are identical, relying on the same law and facts. Both focus on Brookside's alleged failure to provide a reasonable accommodation in the form of on-premises parking for Bryan's work truck. Finally, the decision of the board was a dismissal based on a lack of probable cause. Such a dismissal operates as a decision on the merits. *See e.g. Herrera*, 680 F.3d at 547 (finding county human rights commission's no-probable-cause determination an adjudication on the merits and causing preclusive effect). Therefore, Jaylynn's claim is precluded by the prior LMHRC proceeding. Since we find Brookside is entitled to judgment on the pleadings as to the failure-to-accommodate claim, punitive damages would also not be available.[3]

### ii. URLTA Claim

The Reeveses allege that Brookside retaliated against them for filing a discrimination claim and reporting housing code violations by failing to renew their lease and by increasing rent payments. DN 1-1 at 5. The Kentucky Uniform Residential Landlord and Tenant Act (URLTA) provides that a landlord may not retaliate by increasing rent or decreasing services or by bringing or threatening to bring an action for possession after the tenant complains of housing code violations or for failure to provide required maintenance. KY. REV. STAT. § 383.705. No Kentucky case appears to permit an action based on failure to renew a lease, though the Restatement seems to recognize such an action. *See* RESTATEMENT (SECOND) OF PROPERTY, LAND. & TEN. § 14.8 (AM. L. INST. 1977) ("a landlord has taken retaliatory action with respect to

---

[3] Regardless, the Court notes that punitive damages are not available under the Kentucky Civil Rights Act. *Kentucky Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 138 (Ky. 2003).

residential property whenever he . . . refuses to renew a tenancy for a specified term when that term ends, if" certain conditions are met). The Court is not convinced Kentucky would recognize an URLTA claim based solely on failure to renew a lease, given the plain language of the statute. However, even applying the rule of the Restatement, judgment would be granted to Brookside because the Reeveses admit to being in default on their loan payments. *Id.* at § 14.8(3) (requiring tenant to not be in default).

Further, the lease itself provided that Brookside had discretion to renew the lease and that, in the event of continued occupancy, the rent would increase:

> [C]ontinued occupancy by Resident after expiration of the Term for any reason shall be considered a rental from month to month under the same terms and conditions of this Lease. Subject to requirements of applicable law, Landlord in its sole discretion may elect not to renew this Lease. **If this lease is not renewed, rent shall be adjusted to the rent currently being charged for the same type of unit plus an additional $100.00 for said month to month tenancy.**

DN 7-4 at 4 (emphasis in original). The lease was signed prior to the allegations of discrimination or housing code violations in this case. Since the actions leading to the lease nonrenewal and rent increase were taken prior to the complaints, they cannot be the basis for discriminatory motive. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (noting that "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). Therefore, Brookside is entitled to judgment on the Reeveses URLTA claim.

### C. Brookside's Claims

Brookside brought claims for eviction, unpaid rent, interference with peaceful enjoyment, and property damage. As an initial matter, the Court finds that the eviction claim has been mooted by the Jefferson County District Court's forcible detainer order and subsequent vacation of the apartment. Of the remaining claims, Brookside claims it is entitled to judgment on the

pleadings as to unpaid rent and interference with peaceful enjoyment. Brookside, recognizing that a dispute exists as to the property damage claim, does not seek judgment on the pleadings on that claim, only asserting that it has pled sufficient facts to make out a plausible claim.

### i. Unpaid Rent

The Reeveses did not deny Brookside's assertion that plaintiffs failed to pay rental fees and late charges, resulting in a balance of $1,259.97 as of January 2, 2018. They merely asserted that "rental monies claimed due and owing as a result of retaliatory actions by Defendant are not lawfully due and owing." DN 6 at 1. As discussed above, *supra* at (IV)(B)(ii), the actions of Brookside could not have been retaliatory because they were initiated prior to the arising of any protected actions by the Reeveses. On that ground alone, Brookside has demonstrated it is entitled to judgment.

However, even if the Court were to accept the Reeveses excuse, it is clear that the duty to pay rent continues even when there are violations by landlords. URLTA contains limited statutory remedies for housing issues and nonpayment of rent is not one of them. *See* KY. REV. STAT. § 383.625 (noncompliance by landlord); KY. REV. STAT. § 383.635 (remedies for noncompliance that affects health and safety); KY. REV. STAT. § 383.645 (landlord's noncompliance as defense to action for possession or rent); KY. REV. STAT. § 383.655 (tenant's remedies for unlawful ouster, exclusion or diminution of service). Therefore, Brookside's motion for judgment on the pleadings will be granted and the Reeveses motion to dismiss will be denied as to the claim for unpaid rent.

### ii. Interference With Peaceful Enjoyment

The Reeveses perfunctorily claim that Brookside "does not have standing to raise the claimed right of peaceful enjoyment of any tenant at Brookside Apartments." DN 6 at 2.

However, URLTA specifically provides that a landlord may seek damages for a tenant's interference with a neighbor's peaceful enjoyment. *See* KY. REV. STAT. § 383.660 (permitting landlord to recover damages for tenant violations of § 383.605); KY. REV. STAT. § 383.605 (requiring a tenant and his invitees to "conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises"). *See also Cossitt v. Flathead Indus., Inc.*, 415 P.3d 486, 490 (Mont. 2018) (applying Montana's URLTA to find that standing exists for landlords enforcing peaceful enjoyment provisions). It is admitted that the Reeveses engaged in aggressive and obscene behavior toward staff and other tenants, including the use of racial slurs. This is sufficient to demonstrate an interference with the right of Brookside's tenants to the peaceful enjoyment of the premises. Therefore, Brookside's motion for judgment on the pleadings will be granted and the Reeveses motion to dismiss will be denied as to the claim for interference with peaceful enjoyment.

### iii. Property Damage

Brookside alleged that "Plaintiffs caused significant and costly damages, including but not limited to damage to the carpet, in the Premises." DN 5 at 6. The Reeveses denied that they "negligently destroyed, defaced, damaged or impaired the rental premises." DN 6 at 1–2. Since Brookside does not seek judgment on the pleadings with regard to alleged property damage, the burden is on the Reeveses to demonstrate that the counterclaim lacks sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. The conclusory allegation made in their answer to the counterclaim is insufficient to meet that burden. Therefore, the motion to dismiss on this ground will be denied.

### D. Continuing Supplemental Jurisdiction

At this point, the Court finds itself having resolved all claims—including the one for which it had original jurisdiction—except the property damage claim. In such a scenario, the Court is permitted to decline supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). When determining whether to exercise such jurisdiction, the Court is required to balance the interests. *Harper*, 392 F.3d at 211. The Court should consider *inter alia* "the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Id.* (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)). Continued supplemental jurisdiction is proper when the case has been pending in the federal court for an extended time, discovery has occurred, and where motions are ripe and pending. *Id.* (discussing *Taylor v. First Am. Bank-Wayne*, 973 F.2d 1284, 1288 (6th Cir. 1992)).

This case has only been pending in this Court since January 4, 2018. DN 1. The Court has postponed the Rule 16 case management conference and Rule 26(f) discovery conference. DN 26. This opinion and order resolves all currently pending motions. Further, the single remaining claim for property damage is a state law claim, likely small in recovery amount. On balance, the Court is convinced that the continuing exercise of jurisdiction is not in the interests of judicial economy. Therefore, the Court will *sua sponte* dismiss Brookside's remaining claim without prejudice.

V.     **Conclusion**

In summary, Brookside's motion for judgment on the pleadings will be granted as to the Reeveses failure-to-accommodate, retaliation, and punitive damages claims and as to Brookside's unpaid rent and peaceful interference claims. Brookside's motion for judgment will be denied as moot with regard to Brookside's eviction claim. The Reeveses motion to dismiss

14

will be denied in full. With that, all that remains is Brookside's property damage claim. Finding that the continuing exercise of supplemental jurisdiction would not be appropriate, the Court will also dismiss that claim without prejudice.

A separate order will be entered in accordance with this opinion.

March 4, 2019

**Charles R. Simpson III, Senior Judge**
**United States District Court**